## RUST v. SHAMROCK OIL & GAS CORPORATION.
### No. 6033.

Court of Civil Appeals of Texas. Amarillo.
Feb. 13, 1950.

Rehearing Denied March 20, 1950.

McWhorter, Howard, Cobb & Gibson, Lubbock, for appellant.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo (C. A. Stein, Amarillo, of counsel), for appellee.

STOKES, Justice.

This action was instituted by the appellee, Shamrock Oil & Gas Corporation, against appellant, J. W. Rust, upon an open account for gasoline, oil, and other items sold and delivered to appellant by J. M. Crab, doing business under the trade

name of Triangle Oil Company at Dumas, in Moore County, and sold and assigned by Crab to the appellee.

Appellant answered by special exceptions, a general denial and a special answer to the effect that the account was not wholly just and true. He included in his answer a cross-action in which he alleged that he was in the trucking and grain business and had purchased wheat at Lamar, Colorado, which he desired to transport from Lamar to Amarillo, Texas. He alleged that he arranged with J. M. Crab to place with him ten new truck tires to be used by his drivers to replace any tires that might blow out or become damaged to the extent that they were not useable while on the road transporting the wheat from Lamar to Amarillo. He alleged that blown-out tires were of value to him in procuring adjustments with the merchants from whom he had purchased them and that his drivers exchanged ten old or blown-out tires for the new ones he had left with Crab; that the old or blown-out tires were left with Crab as bailee to be delivered back to appellant when he called for them. He alleged that Crab agreed to keep the old tires safely, protect them and redeliver them to appellant for use in his adjustment with those from whom he had purchased them; that, instead of complying with his agreement, Crab, his agents and employees mislaid or destroyed the used tires and they thereby became a total loss to him, to his damage in the sum of $500 which he pleaded as an offset to any claim asserted against him by the appellee.

When the case was called for trial appellant admitted appellee's cause of action except insofar as it may be defeated in whole or in part by the set-off and counter-claim contained in his cross action.

The case was submitted to a jury upon special issues, in answer to which the jury found that the used tires left with Crab by appellant were of no value to appellant and that J. M. Crab did not agree to hold the used tires for delivery back to appellant. Upon the findings of the jury, the court entered judgment that appellee recover the amount sued for, $616.63, and denied appellant any recovery upon his cross-action.

Appellant duly excepted to the judgment and has brought the case before this court for review, asserting that the court erred first, in admitting certain testimony because there were no pleadings to support it; secondly, in submitting to the jury Special Issue No. 3 and basing its judgment upon the answer thereto; and thirdly, in basing its judgment upon the jury's answer to Special Issue No. 1 wherein the jury found the tires were of no value to him, because the uncontroverted evidence was to the effect that the tires were of value to him.

In answer to Special Issue No. 3 the jury found that J. M. Crab did not agree to hold the blown-out tires for redelivery to appellant. Appellant urged a motion to disregard the finding because it was immaterial. He alleged in the motion, and contends here, that Crab admitted he received and held the blown-out tires and that, as consideration for doing so, appellant purchased large quantities of oil and gasoline from him. He asserts that it necessarily follows that Crab, the assignor of appellee, became a bailee of the blown-out tires and, as such, it was his duty to return them to appellant. The uncontroverted testimony showed that he did not return them to appellant and his failure to do so constitutes the basis of appellant's cross-action.

The rules concerning bailments and the circumstances under which one becomes a bailee have long been established by the courts of this and many other jurisdictions in this country and repeated by eminent text writers. It is universally recognized that, to constitute the relationship of bailor and bailee, there must be a contract expressly entered into or one arising by implication, growing out of the delivery of property to the party entrusted with its care. There must be a delivery of the property to the bailee and an actual acceptance of it by him. An acceptance by the alleged bailee must be shown because the relation is founded upon contract. The duties and liabilities springing from the relationship cannot be thrust upon one without his knowledge or consent. His acceptance of the property and of the responsibilities accompanying the relationship may be

proved directly or by circumstances, but the proof must show that the person sought to be charged as bailee knew he was assuming such relationship and responsibilities concerning the property before he can be charged with the duties and responsibilities growing out of it. Miller v. Peck, Tex.Civ. App., 258 S.W. 887; E. J. Keller Co., Inc., v. Reading Co., 3 Cir., 49 F.2d 33; Bertig Bros. v. Norman, 101 Ark. 75, 141 S.W. 201, Ann.Cas.1913D, 943; Walker v. Norfolk & W. Ry. Co., 67 W.Va. 273, 67 S.E. 722; Samples v. Geary, Mo.App., 292 S.W. 1066.

■ We have carefully examined the testimony and we fail to find any evidence that Crab expressly agreed with appellant or his truck drivers that the used tires would be left with Crab and that he would keep them for appellant until appellant called for them. Appellant testified that he telephoned from Lamar, Colorado, to some of his truck drivers, who were then at Dumas, and instructed them to find a place to unload and store the new tires which they had brought with them from appellant's home at Lorenzo, Texas, and the testimony showed that they made such an arrangement with Crab; but appellant's testimony does not show that any instructions were given concerning the blown-out or used tires, nor that any arrangement was made with Crab by appellant's truck drivers for Crab to keep them and return them to appellant or anyone else. Crab testified that no one said anything to him about keeping the old tires but that, before disposing of them, it was his custom to ascertain, if possible, what disposition the owners wished to make of them. The testimony shows the old tires were finally picked up by the city's garbage truck and disposed of as garbage. Trayler, Crab's employee, heard the conversation between the truck driver and Crab concerning the storing of the new tires and he testified that the conversation pertained only to the new tires and that they wanted to leave them at the filling station in order that the drivers would have spare tires available in the event they were needed. The only logical conclusion that can be drawn from this is that there was no express contract between appellant and Crab that would constitute Crab a bailee of the old tires.

Appellant contends, however, that there was an implied contract that Crab would hold the old tires at his place of business and redeliver them to appellant when he called for them. He asserts that the facts and circumstances which created the bailment and resulted in Crab's becoming a bailee were undisputed and that, therefore, the court erred in submitting special issue No. 3 to the jury and in basing the judgment upon the jury's finding thereon, which finding was that Crab did not agree to hold the old tires for redelivery to appellant. He contends that, since an implied bailment was established by the facts and circumstances proven, and appellee did not, by either pleading or proof, legally excuse Crab from the duty of returning the tires to him, the court erred in overruling his motion to disregard the jury's finding under special issue No. 3 but, instead, rendering judgment against him thereon.

■ As we have already said, a contract of bailment can be established by implication the same as any other contract. An implied contract must depend upon substance, however, for its existence. There must be some act or conduct of the party sought to be bound from which an implied contract arises. It cannot arise from nothing, nor from a mere conjecture or possibility. It must rest upon a substantive foundation. It is just as necessary that there be a structure for an implied contract as there must be for an express contract. The implication arises only from something which the party sought to be bound says or does. Cleveland Railway Co. v. Kuncic, 260 Ohio App. 275, 159 N.E. 96. In general, knowingly taking property into possession or control is a sufficient acceptance and may be sufficient to establish an implied bailment but in order to have that result the delivery must be made for the purpose of creating a bailment. Fletcher v. Ingram, 46 Wis. 191, 50 N.W. 424; Walker v. Norfolk & W. Ry. Co., supra; Samples v. Geary, supra; Biggs & Co. v. Lokey, Tex.Civ.App., 62 S.W.2d 665; Marr-Piper Co. v. Bullis, Tex.Com.App., 1 S.W.2d 572, 573. In the case last cited the Commission

of Appeals said: "Of course, in implied contracts as well as express contracts there must be shown the element of mutual agreement. But the only difference is that such agreement is expressly stated, in the one instance, and is inferred from the circumstances, in the other."

We do not find anything in the testimony that indicates appellant or his truck drivers left the old tires with Crab with the intention that Crab would keep them and redeliver them to appellant nor does the testimony show any act, word, or conduct on the part of Crab that indicates he was conscious of any such expectation on the part of appellant or any of his truck drivers. Some few days after the tires were left with him, Crab inquired of one of appellant's truck drivers as to what they wished him to do with the old tires and he permitted them to remain at his filling station for a week or ten days after he had made such inquiry before he permitted the garbage truck to take them away. Although he waited several days after making inquiry of the truck driver, he was not informed by appellant or any one else that they expected him to keep the tires until they were called for. We are not in accord with appellant in his contention that an implied bailment was created. As we view the record and the testimony there were no facts or circumstances established from which a bailment of any kind resulted.

Appellant next complains of the action of the court in basing its judgment against him upon the finding of the jury that the old tires were of no value to him. He asserts the uncontroverted testimony showed that he could have exchanged them for new tires with Sears-Roebuck & Co., from whom he purchased them, and obtained material credit upon the price of new tires to take their place. It was shown by the testimony that, where a tire blew out before it had been used a reasonable length of time or the blow-out was the result of faulty material or workmanship, adjustments were made and new tires furnished to replace them for a nominal sum. Appellant testified that, in his opinion, the old tires left with Crab had not been used on the trucks more than 5,000 miles and that, therefore, they could not have been worn out so that they would not have been of material value in making adjustments on the purchase of new tires. He also testified that, if the tread was worn off and no tread was left on them, no adjustment would be made by the dealer from whom they were purchased. Trayler, Crab's assistant at his filling station, testified that he changed the tires, replacing the old ones with the new ones appellant's truck driver had left with Crab; that the treads on all of the old ones were "worn slick;" and that the old tires were worn out. This testimony made an issue of fact for the jury as to whether or not the old tires were in such condition as to be of material value to appellant in making adjustments of them and required the court to submit the issue to the jury. The jury found the old tires were of no value to appellant and the court did not commit error in rendering judgment against appellant upon the jury's finding.

Appellant assigns as error the action of the court in permitting Crab to testify, over appellant's objection, that one of appellant's truck drivers told Crab that the old tires were of no value and that he might dispose of them in any manner he wished. The objection to this testimony was based upon the absence of any pleadings that the truck driver was the agent of appellant or any pleading of estoppel by virtue of this instruction of the truck driver. In our opinion, even if the action of the court in permitting this testimony was error, it was immaterial and harmless and could not have affected the jury's findings in answer to the special issues submitted to them nor the judgment entered by the court. It is clear, we think, that appellant did not establish any kind of bailment and Crab was, therefore, under no obligation or duty to keep the old tires and return them to appellant when he called for them.

We have carefully examined all of the contentions presented by appellant and, in our opinion, none of them reveals error. The judgment of the court below will, therefore, be affirmed.