BAILEY COUNTY APPRAISAL DISTRICT and the Appraisal Review Board for Bailey County Appraisal District, Appellants,

v.

Joe SMALLWOOD, a/k/a Joe L. Smallwood and Wife, Zuma Jauree Smallwood, Appellees.

No. 07–91–0270–CV.

Court of Appeals of Texas, Amarillo.

Feb. 11, 1993.

Rehearing Overruled April 12, 1993.

Perdue Brandon Fielder Collins and Mott, David A. Ellison, Amarillo, for appellants.

Clifford Krier Manning Greak & Stone, P.C., Nolan Greak, Amarillo, for appellees.

Before DODSON, BOYD and POFF, JJ.

DODSON, Justice.

Bailey County Appraisal District and the Appraisal Review Board for the Bailey County Appraisal District (collectively the "District") appeal the trial court judgment, which found that the property of appellees, Joe L. and Zuma Jauree Smallwood, be appraised at $25,000 for property tax purposes, in contravention of the District's appraisal of $55,000. The Smallwoods, by cross-point, challenge the trial court's judgment notwithstanding the verdict, which disallowed their attorney's fees. We affirm.

The Smallwoods purchased certain commercial property in Muleshoe, Texas, in November 1989. On 1 January 1990, the District valued this property for ad valorem tax purposes at $55,000. The Smallwoods sought to appeal this determination and, after exhausting their administrative remedies, pursued a judicial review of the 1990 tax appraisal.

During trial, both parties elicited testimony pertaining to the tax assessment of the property in question. The Smallwoods presented two witnesses who testified on the tax issue. First, the Smallwoods tendered Roy D. Whitt who, in 1989, sold them the property in Muleshoe. On direct examination, Mr. Whitt, a certified real estate appraiser, testified that he sold the Smallwoods the property for $27,000, which included $25,000 for the building and $2,000 for the office equipment. Mr. Whitt further testified that the property had been on the open market for eight or ten years, $27,000 was a fair price considering the market conditions in Muleshoe, and he was under no pressure to sell the property. On cross-examination, Mr. Whitt stated that he did not perform an appraisal or market analysis on the property.

Second, Mr. Smallwood, a real estate agent in Muleshoe for approximately twenty years, testified on direct examination to the following:

Q  Do you have an opinion as to the value of the building that you bought, the building in question, and the property as of January the 1st of 1990?

A  Yes.

Q  What is your opinion?

A  Well it's less than I paid for it. I paid $25,000.00 so that would have to be the value of it.

Q  Is that your opinion?

A  Yes.

On cross-examination, Mr. Smallwood conceded that the value he placed on the building was not based on a formal appraisal. Instead, he bases the building's value solely on the purchase price.

On the tax issue, appellants tendered Mr. Jay Louis Murfee, Jr. Mr. Murfee has been a real estate broker and real estate appraiser in investment counseling since 1947. Mr. Murfee made an independent appraisal of the disputed property. In his appraisal, Mr. Murfee used the three generally accepted approaches used in appraising income producing real estate, *i.e.* cost, market, and income. Mr. Murfee testified that the income appraisal was the most reliable and, based on that technique, the property in question was valued at $55,000 on 1 January 1990.

Upon the close of the Smallwoods case in chief, the District moved for directed verdict urging that the Smallwoods failed to produce any evidence on a generally ac-

cepted appraisal technique as required by the Texas Tax Code. The trial court denied the motion. The District reurged their motion upon the close of their case in chief. The trial court, again, denied the motion. Finally, the case was submitted to the jury which found the fair market value of the property in question on 1 January 1990 was $25,000.

By a single point of error, the District contends the trial court erred in rendering judgment for the Smallwoods, because there was legally insufficient evidence presented to determine market value as required by law. We disagree.

In that regard, the District asserts that the Smallwoods failed to comply with section 23.01 of the Texas Tax Code, because the only evidence put forth by the Smallwoods did not derive any testimony of fair market value from generally accepted appraisal techniques. Instead, the Smallwoods presented evidence of the property's purchase price as being demonstrative of fair market value. Section 23.01 states that in determining market value for the purpose of tax appraisals, the "market value of property shall be determined by the application of generally accepted appraisal techniques, and the same or similar appraisal techniques shall be used in appraising the same or similar kinds of property." Tex.Tax Code Ann. § 23.01 (Vernon 1992).

We, however, do not interpret this statute to abolish the long line of precedent in this State on fair market value. Nor do we interpret this statute to abrogate the definition of fair market value as recognized in the Texas Constitution and section 1.04(7) of the Texas Tax Code.

In regard to valuing property at its fair market value, the Texas Constitution provides in pertinent part:

[n]o property of any kind in this State shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value nor shall any Board of Equilization of any governmental or political subdivision or taxing district with-

in this State fix the value of any property for tax purposes at more than its fair cash market value; ...

Tex.Const. art. VIII, § 20.[1] In addition, section 1.04(7) states:

"Market value" means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if:

(A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser;

(B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and

(C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other.

Tex.Tax Code Ann. § 1.04(7) (Vernon 1992).

■ From time out of mind, Texas courts have defined market value as "the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it...." *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808, 815 (1954); *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194 (1936). It is also settled that an owner is qualified to testify about the market value of his property. *Porras v. Craig*, 675 S.W.2d 503, 505 (Tex.1984); *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39, 46 (Tex.Civ.App.—Amarillo 1978), *writ ref'd n.r.e. per curiam*, 580 S.W.2d 340 (Tex.1979). But, the landowner must testify as to market value, not intrinsic value, for that evidence to be probative of market value. *Porras v. Craig*, 675 S.W.2d at 505.

■ With this background, we will now evaluate the evidence in accordance with the appropriate standard. In reviewing a legal sufficiency, or "no evidence" challenge, this Court examines only the evi-

---

**1.** To avoid confusion, we note that the terms "fair market value" and "fair cash market value" are synonymous terms. *West Texas Hotel Co. v.*

*City of El Paso*, 83 S.W.2d 772, 776 (Tex.Civ. App.—El Paso 1935, writ dism'd).

dence and inferences tending to support the findings, disregarding all contrary evidence and inferences. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). When the evidence is legally insufficient, there is no evidence of probative force to support the finding in question. *Garza v. Alviar*, 395 S.W.2d at 823. Probative evidence, as defined by this Court, "serves to prove the asserted proposition and it must be more than a surmise or suspicion." *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 65 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

■ In the instant case, Mr. Smallwood did not consider the property's intrinsic value when making his evaluation. Instead, he determined the fair market value based on the property's purchase price. Moreover, Mr. Smallwood was under no pressure to buy. Also, Mr. Whitt stated that the property had been on the market for a number of years and he was under no pressure to sell. Finally, both men had been involved in the real estate market in Muleshoe as an appraiser and agent, respectively. Consequently, there is some probative evidence, and there are inferences therefrom, tending to support the jury finding on fair market value. Accordingly, point of error one is overruled.

■ By cross-point one, the Smallwoods contend the trial court erred by entering judgment notwithstanding the verdict and disallowing the award of attorney's fees to their counsel. Again, we disagree.

In this regard, the District served the Smallwoods with the following written interrogatory:

3. Please identify each person who you may call as an expert witness at the trial of this lawsuit and state for each the subject matter of his or her expected testimony, a brief summary of the opinions about which he or she

may testify, and the profession or field in which (s)he is an expert.

Their response only identified Mr. Smallwood. Conversely, the Smallwoods served the District with written interrogatories. In their request, the Smallwoods asked the District to identify each person with knowledge of relevant facts. In their response, the District listed Nolan Greak, counsel for the Smallwoods.[2]

The court held a pretrial hearing addressing whether or not Mr. Greak would be allowed to testify on attorney's fees. The Smallwoods asserted that this testimony should be allowed because the District listed Mr. Greak as a person with knowledge of relevant facts. Counsel for the District, on the other hand, urged that Mr. Greak be excluded from testifying, because he failed to list himself as an expert witness. At trial, the court allowed Mr. Greak to testify as to reasonable and necessary attorney's fees.

In response to Question No. 2 of the court's charge, the jury awarded the Smallwoods attorney's fees in the following manner: $2,300 for preparation of trial, and $2,500 for an appeal to the court of appeals. Next, the court entered judgment notwithstanding the verdict on the issue of attorney's fees and ruled that the Smallwoods not recover those fees, because the Smallwoods failed to list Mr. Greak as an expert witness and, consequently, his testimony should have been excluded.

A party has an affirmative duty to identify expert witnesses in response to an appropriate inquiry. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671 (Tex.1990); Tex.R.Civ.P. 166b(6)(b). Furthermore, the identity of expert witnesses must be disclosed no later than thirty days prior to the beginning of trial. *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987); Tex.R.Civ.P. 166b(6)(b). Failure to comply will result in exclusion of testimony unless the proffering party demonstrates good cause for its admission.

2. Neither the interrogatories propounded by the Smallwoods nor the answers given by the District are part of the record before us. Both parties, however, gave the same general rendition of facts pertaining to this set of interrogatories. Since the questions and answers allegedly contained in those interrogatories are not challenged, we can accept these assertions as true. Tex.R.App.P. 74(f).

*E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d at 364; Tex.R.Civ.P. 215(5). In this latter regard, we note that the Smallwoods do not argue good cause. Instead, as we mentioned earlier, the Smallwoods argue that Mr. Greak was properly allowed to testify because the District listed him as a witness with knowledge of relevant facts.

■ A fact witness is "limited to testimony about the specific facts of the case and should not be allowed to give expert opinions regarding scientific, technical, or other specialized knowledge." *Baylor Medical Plaza Services v. Kidd,* 834 S.W.2d 69, 73 (Tex.App.—Texarkana 1992, writ denied). Fact witnesses, for discovery purposes, are generally referred to as witnesses with knowledge of relevant facts. *Id.* An expert witness, on the other hand, is "one who, by knowledge, skill, experience, training, or education, has specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue and may express an opinion about the matter." *DeLeon v. Louder,* 743 S.W.2d 357, 359 (Tex.App.—Amarillo 1987), *writ denied per curiam,* 754 S.W.2d 148 (Tex.1988); Tex.R.Civ.Evid. 702.

Mr. Greak's testimony focused solely on the issue of attorney's fees. On this matter, Mr. Greak gave his opinion as to reasonable attorney's fees charged in Lamb County, Bailey County, and Lubbock County. Mr. Greak concluded the reasonable hourly fee was $125.00. After reviewing the record, we are persuaded that Mr. Greak testified only in the capacity of an expert witness. Therefore, it was incumbent that Mr. Greak be designated as such. Since the award of attorney's fees was based entirely on testimony that should have been excluded, the award cannot stand. Consequently, cross-point one is overruled.

Accordingly, the judgment is affirmed.