**Stan HOYE and Hoye, Inc., Appellants,**

v.

**Phil LIKE and Nick Smith, Appellees.**

No. 07–97–0041–CV.

Court of Appeals of Texas, Amarillo.

Oct. 29, 1997.

Wyatt L. Brooks, Hinkle, Cox, Eaton, Coffield & Hensley, LLP, Amarillo, for appellants.

Robert L. Elliott, Cunningham & Elliott, Dalhart, for appellees.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

REAVIS, Justice.

Stan Hoye and Hoye, Inc. (herein Hoye) appeal from a judgment signed December 13, 1996 based on a jury verdict in favor of Phil Like and Nick Smith (herein Like) on Like's claim for breach of a parol contract of agistment. Based upon the rationale and authorities expressed herein, we reverse and render.

By five points of error Hoye contends that (1) the trial court erred in failing to render a directed verdict or judgment notwithstanding the verdict because there was no evidence that Hoye entered into a contract with Like which imposed an obligation to accept possession and take care of Like's cattle; (2) the trial court erred in failing to direct a verdict or render judgment notwithstanding the verdict because there was no evidence to support the jury's finding that Hoye entered into an oral agistment contract; (3) the trial court erred in instructing the jury that Hoye's failure to redeliver Like's cattle resulted in a shifting of the burden of proving the exercise of reasonable care; (4) the trial court erred in admitting expert testimony after the expert had been ordered to provide the basis for his opinions and failed to do so; and (5) the trial court erred in refusing to render judgment for Hoye for the debt owed and admitted by Like and in striking Hoye's formal trial amendment after verbally granting it.

During 1986, and prior thereto, Phil Like and Nick Smith were partners in the cattle business. Hoye owned land with a growing wheat crop in Hartley County. Before the Fall of 1986, Hoye's son had an arrangement with Like for pasturing Like's cattle which included caring for the cattle. When Hoye's son moved to Amarillo, the son ceased his operations of pasturing and caring for cattle. In the Fall of 1986, Hoye contacted Like to explore the possibility of future cattle pastur-

ing arrangements, but because Hoye lived in Electra, Hoye told Like that he would be unable to furnish care for Like's cattle while on Hoye's wheat pasture. Hoye and Like entered into a parol contract for cattle to be pastured commencing in the Fall of 1986. Because neither Hoye nor Like could care for the cattle, they agreed that Like would select and engage caretakers for the cattle and that the expense of the cattle care would be paid by Like initially, but then split equally between Like and Hoye. Like engaged Ben Woolley and his son as caretakers for the cattle. Like contended, and the jury found, that Like and Hoye had entered into a parol agistment contract whereby Hoye was charged with the responsibilities and duties of caring for the cattle as a bailee.

In January and February of 1987, Like caused 912 head of cattle to be delivered to Hoye's property. Shortly after the cattle arrived, Woolley noticed that some of the cattle were ill. Ultimately, approximately 116 head of cattle became sick and died while grazing on Hoye's property. The cause of death of the cattle was not determined by the jury, but it appears that the death loss may have been caused by a chemical stored on the land, which was unknown to Hoye, Like, or Woolley. Like then sued Hoye claiming that Hoye breached the parol agistment contract and sought damages for the death of 116 head of cattle. Based upon the jury's finding that the parties had entered into an agistment contract for pasturing and caring for the cattle, and that Hoye had breached it, Like recovered judgment against Hoye in the amount of $87,341.00, which included damages and prejudgment interest.

By points of error one and two, Hoye contends that the trial court erred in failing to render a directed verdict or judgment notwithstanding the verdict because there was no evidence that the parties entered into a contract imposing upon Hoye an obligation to accept possession and take care of Like's cattle and, no evidence to support the jury's finding that the parties entered into a parol agistment contract. We agree.

In considering a no evidence contention, we must consider the entire record to determine if there is any probative evidence to support the findings while disregarding all evidence and inferences to the contrary, *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and if so the findings will be upheld. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). Probative evidence is evidence which serves to prove the asserted proposition, and it must be more than a surmise or suspicion. *Bailey Cty. Appraisal Dist. v. Smallwood*, 848 S.W.2d 822, 825 (Tex.App.—Amarillo 1993, no writ). Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970). A no evidence point will be overruled when the record contains more than a scintilla of evidence supporting the finding. However, we are not authorized to convert mere suspicion or surmise into some evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

An agistment is a bailment whereby the bailee takes animals to pasture on land owned or controlled by the bailee. *Barclay v. Burge*, 245 S.W.2d 1021, 1022 (Tex. Civ.App.—Beaumont 1952, no writ). Where the relationship of bailor and bailee is established, the bailee has the burden to show that his failure to return the animals to the bailor was not due to any negligence on the part of the bailee. *Id.* at 1023.

The relationship of bailor and bailee is based on contract under which the bailed goods are delivered and accepted by the bailee. *Rust v. Shamrock Oil & Gas Corporation*, 228 S.W.2d 934, 935 (Tex.Civ. App.—Amarillo 1950, no writ). The duties and liabilities arising from the relationship cannot be imposed upon one without his knowledge or consent. Although the relationship may be established by either direct or circumstantial evidence, the evidence must show that the person sought to be charged as a bailee knew he was assuming such relationship and the responsibilities before he is charged with the duties of a bailee. *Id.* at 936. Furthermore, the creation of a bailment requires that possession and control over an object pass from the bailor to the

bailee. *Allright Auto Parks, Inc. v. Moore,* 560 S.W.2d 129, 130 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). Without a bailment contract, no presumption of negligence arises requiring the bailee to prove that he was not negligent. *Id.*

At trial, Like, Hoye, and Woolley testified concerning the arrangement for pasturing and caring for the cattle. Because Like and Hoye were unable to provide care for the cattle, Like engaged Woolley to care for the cattle, however no evidence was introduced to establish whether Woolley was an independent contractor, employee, or agent of Like and Hoye, or either of them. The record reflects that after the cattle were delivered to the wheat pasture, that Woolley, not Hoye, provided the daily caretaking of the cattle and that Woolley never spoke with or met Hoye until the day of trial. Periodically, Like paid Woolley for his services by checks noted "cattle care," upon the agreement that Like would deduct one half of the cattle care expenses from his payment to Hoye.

The trial court instructed the jury that "bailment" is "a delivery of goods for some purpose on a contract, expressed or implied...." Also, the trial court instructed the jury that an "agistment contract" is a "particular kind of bailment under which a person **takes** animals to graze and pasture on lands which he owns or controls." (Emphasis added). As ordinarily used **take** means to get into one's hands or into one's possession, power, or control. Webster's Ninth New Collegiate Dictionary 1202 (9th ed.1988). By its answer to jury question number one, the jury found that Like entered into an oral agistment contract with Hoye for the purpose of pasturing cattle. In the context of a bailment, **taking** cattle is synonymous with "delivery and acceptance" of the property by the alleged bailee. *Rust,* 228 S.W.2d at 935–36.

Like contends that *Barclay v. Burge,* 245 S.W.2d 1021 (Tex.Civ.App.—Beaumont 1952, no writ), is controlling. Although *Barclay* may express the proper rule of accountability of a bailee, because the existence of a bailment contract was not questioned in *Barclay,* our analysis will follow the rules announced in *Rust* regarding the formation of a bailment contract. Under *Rust,* even though a bailment contract may arise by implication, it cannot arise from nothing, nor from a mere conjecture or possibility. *Rust,* 228 S.W.2d at 936.

The record does not include any evidence of an express agreement for bailment of the cattle or that Hoye knew that he was assuming the responsibilities of a bailee (agister). Although evidence of the delivery of the cattle to Hoye's pasture under the care of Woolley may imply the possibility of a bailment contract, because the mere delivery of the cattle under these circumstances could also indicate the possibility of a landlord and tenant or joint venture relationship, delivery of the cattle standing alone is not probative evidence of the existence of a bailment contract. Moreover, there is no evidence to show that actual possession and control of the cattle was transferred to Hoye or that Woolley was the agent or employee of Hoye. Because a bailment by implication cannot arise upon conjecture or possibility, *Rust,* 228 S.W.2d at 936, and because there is no evidence of an express contract between Like and Hoye creating a bailor and bailee relationship, Hoye's first and second points of error are sustained.

By his fifth point of error, Hoye contends that the trial court erred in refusing to render judgment in his favor for $16,360.00 due from Like, and in striking his formal trial amendment after verbally granting leave to amend. Hoye also requests that we render judgment that he have recovery against Like in the amount of $16,360.00. We disagree.

During cross-examination, Like admitted, without objection, that he owed Hoye $16,360.00. Hoye's pleadings however, did not assert a set-off and did not include a counterclaim. During the charge conference, Hoye objected to the portion of the proposed instruction that the jury should not reduce any amount owing to Like by Hoye by any amounts claimed owed to Hoye by Like. Hoye contended that the evidence of the debt owed from Like to Hoye in the amount of $16,360.00 was established as a matter of law,

and received into evidence without objection and that Rule 67 of the Texas Rules of Civil Procedure applied.

After hearing from both counsel, the trial court indicated that if Like prevailed, the court would grant a set-off and concluded that the instruction was proper. Following additional comments from counsel the court again announced that a set-off would be allowed. After Like's counsel urged that he did not want the jury to deduct the debt owed to Hoye and the court to deduct it also, the court again announced, "Right." After denying Hoye's objection to the instruction, Hoye requested that a trial amendment be allowed with respect to the debt owed to Hoye. The court stated:

> That permission is granted, if necessary, if you choose to do so. That would be up to you.

After the jury verdict was received, Hoye filed a trial amendment which, among other things, included a counterclaim for $16,360.00 plus prejudgment interest. Like filed a motion to strike Hoye's trial amendment which was granted by the trial court on the ground that no counterclaim was authorized.

During the charge conference, the debt owed by Like to Hoye was characterized by the court and counsel as a set-off which is an affirmative defense and should be raised by pleadings. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). In some cases, where the subject of a counterclaim is barred by the statute of limitations, the recovery on the counterclaim may not exceed the recovery of the alleged claim of the other party. *Christian v. First Nat. Bank of Weatherford*, 531 S.W.2d 832, 841 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). The statute of limitations is often available as a defense to a counterclaim. *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88 (Tex.1977). Where a counterclaim arises out of the same transaction or occurrence which is the basis of the original action, it may be filed even though otherwise barred by limitations, provided that the counterclaim is filed within thirty days of answer date. Tex. Civ. Prac. & Rem.Code Ann. Section 16.069 (Vernon

1997). Because Like would have been entitled to assert limitations or other defenses to the counterclaim, and because it was not filed within thirty (30) days of answer date, the trial court did not err in striking Hoye's counterclaim for $16,360.00 and prejudgment interest. Hoye's fifth point of error is overruled and the relief sought is denied.

Our sustention of points of error one and two which requires that we reverse the judgment, pretermits a discussion of points of error three and four. Tex.R.App. P. 47.1.

Accordingly, having sustained points of error one and two, the judgment is reversed and judgment is hereby rendered that Like take nothing.