NO. 07-04-0333-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 26, 2006

______________________________

JUSTIN CHAPMAN, individually, AMARILLO TOWING, INC., 

and H & C LEASING, INC., 

Appellants

v.

COKER EQUIPMENT SALES, INC., 

Appellee

_________________________________

FROM THE COUNTY COURT AT LAW NO. 2  OF POTTER COUNTY;

NO. 89,764-2; HON. PAMELA SIRMON, PRESIDING

_______________________________

Memorandum Opinion

_______________________________

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellants, Justin Chapman, d/b/a Amarillo Towing, d/b/a H&C Leasing, Amarillo Towing, Inc., and H & C Leasing, Inc. (hereinafter collectively referred to as “Chapman”) appeal from a judgment awarding appellee Coker Equipment Sales, Inc. (Coker) damages for breach of express and implied warranties in the sale of a Mack truck.  In seven issues, Chapman argues 1) there is no evidence of an express warranty of marketable title, 2) there is no evidence that he warranted the truck would be merchantable, 3) there is no evidence of damages for failing to provide the vehicle in a “workable condition,” 4) the trial court used an incorrect post-judgment interest rate, 5) the trial court used an incorrect date to begin calculation of pre-judgment interest, 6) the judgment against all of the appellants is not supported by the evidence, and 7) he is entitled to attorney’s fees.  We modify the judgment of the trial court and affirm it as modified.

Background

The dispute arises from the sale of a wrecked Mack truck.  Though Coker knew the vehicle had been wrecked, 
Chapman represented that it would be repaired to a condition permitting it to be driven from Amarillo to Dallas.  The vehicle was not so repaired, but rather delivered in parts.  Furthermore, Coker discovered it had a salvage title.

Coker sued for deceptive trade practices and breach of warranty.  Trial was to the  court, and the latter found that Chapman had breached the warranties of marketable title, merchantability, and fitness for ordinary purpose.  Damages were awarded in the sum of $20,000.  Thereafter, Chapman appealed.

Issues One and Two – Marketability of Title and Merchantability

Through the first two issues, Chapman contends that the trial court erred in granting Coker recovery because there was no evidence that the warranties of marketable title and merchantability were breached.  We overrule the contentions.

Assuming 
arguendo
 that there was no evidence illustrating breach of those warranties, we find no harm.  This is so because the trial court also found that Chapman breached the warranty of fitness for ordinary purpose.  Furthermore, Chapman does not attack that finding on appeal.  So, irrespective of the accuracy of Chapman’s first two contentions, there remains a basis upon which liability can be founded.

Issue Three – No Evidence of Damages

Next, Chapman argues that there was no evidence supporting the award of damages.  We overrule the issue.

According to statute, the measure of damages applicable to a breach of warranty is the difference between the value of the goods as accepted and their value had they been as warranted.  
Tex. Bus. & Com. Code Ann.
 § 2.714(b) (Vernon 1994).  Appearing in the record at bar is testimony by Stanley Coker that the vehicle had a salvage value of three to five thousand dollars.  Furthermore, Coker paid consideration valued at $25,000 for the Mack truck.  Thus, according to the witness, Coker suffered damage in the range of twenty to twenty-two thousand dollars, and Chapman did not object to that testimony.  
See Blanken v. Krasoff
, No. 03-00-00541-CV, 2001 Tex. App. LEXIS 4995 at *7-8 (Tex. App.–Austin July 26, 2001, no pet.) (not designated for publication) (stating that while the purchase price of an item is not ordinarily evidence of its market value, if the evidence is admitted without objection then it provides more than a scintilla of evidence illustrating market value); 
Bailey County Appraisal Dist. v. Smallwood
, 848 S.W.2d 822, 825 (Tex. App.–Amarillo 1993, no writ) (recognizing that the purchase price of property can be evidence of its market value).  Consequently, there appears of record evidence illustrating that Coker suffered $20,000 in damages.

Issue Four -
 
Amount of Post-judgment Interest

Next, Chapman contends that the trial court should have awarded post-judgment interest at the rate of 5% per annum instead of 10%.  Coker did not respond to the contention in its brief.  We agree with Chapman and sustain the issue.  

The interest rate on post-judgment interest changed in 1993 from 10% per annum to 5%. 
 Tex. Fin. Code Ann. 
§304.003(c)(2) (Vernon Supp. 2005).  Furthermore, the change applied to cases in which the final judgment was signed or subject to appeal on or after the effective date of the Act, that date being June 20, 2003.  
Columbia Medical Center of Las Colinas v. Bush, 
122 S.W.3d 835, 865-66 (Tex. App.–Fort Worth 2004. pet. denied).  The judgment in this case was signed on April 16, 2004.  Because the judgment at bar was signed after the effective date of the Act, the interest rate at bar should be 5% per annum instead of the 10% awarded by the court.  The judgment will be modified to reflect the lower rate.

Issue Five - Calculation of Pre-judgment Interest

 Chapman argues in his fifth issue that the trial court erred in calculating the amount of pre-judgment interest due.  We agree and sustain the issue.

Pre-judgment interest begins to accrue beginning on the earlier of the 180
th
 day after the date the defendant receives written notice of the claim or the date the suit is filed; it ends on the day preceding the date the judgment is rendered.  
Tex. Fin. Code Ann. 
§304.104 (Vernon Supp. 2005).  According to Chapman, the calculation should have started on August 28, 2000, or 180 days after the demand letter dated  March 1, 2000, was sent by Coker.

According to the trial court’s findings of fact, written notice of its claim was given Chapman on March 1, 2000.  Coker does not attack this finding on appeal.  Therefore, pre-judgment interest began to accrue 180 days after March 1, 2000 (
i.e.
 on August 28, 2001), and ended on April 15, 2004, the day before the judgment was signed.  
See Garza v. Texas Alcoholic Beverage Com’n, 
89 S.W.3d 1, 6-7 (Tex. 2002) (holding that a judgment is rendered when it is announced in open court, by memorandum filed with the clerk, or otherwise announced publicly and when there is a question concerning the date judgment was rendered, the date the judgment is signed prevails over a conflicting docket sheet entry).  The judgment should be modified to provide for pre-judgment interest in the amount of $3621.92.

Issue Six – Joint Liability

Next, Chapman argues that the trial court erred in finding all the defendants jointly and severally liable to Coker.  This is purportedly so because Coker contracted with H & C Leasing, Inc., not Chapman or Amarillo Towing, Inc.  We overrule the issue for several reasons.

First, the two paragraph, nine-line argument is bereft of any citation to authority.  Consequently, Chapman failed to comply with Rule 38.1(h) of the Texas Rules of Appellate Procedure, 
see 
Tex. R. App. P. 
38.1(h) (stating that the argument must contain appropriate citation to authority), and waived his complaint.  
Melendez v. Exxon Corp., 
998 S.W.2d 266, 280 (Tex. App.–Houston [14
th
 Dist.] 1999, no pet.) (holding that an appellant waives those issues which he fails to brief in compliance with Rule 38.1(h)).

Second, the only evidence Chapman cites as establishing that Coker contracted with H & C Leasing, Inc., and no one else, is irrelevant.  This is so because it relates to a statement made by Coker’s president when Coker was 
selling a trailer to H & C Leasing
 or Amarillo Towing, 
not when Coker was acquiring the Mack truck
 in dispute here.  In other words, the evidence did not pertain to the transaction underlying the claims at issue.  And, because it did not, we cannot say that it established that only H & C Leasing, Inc. was liable to Coker.

Issue Seven – Attorney’s Fees

In his final issue, Chapman argues that he “should be awarded a reasonable attorney [sic] fee of $8,000 plus a reasonable attorney [sic] fee for this appeal in the event the Final Judgment is reversed and judgment rendered for Appellants.”  So too should such a fee be awarded if the judgment is modified in any respect, Chapman continues.  Why he believes himself entitle to such relief goes unexplained.  Similarly missing is any mention of authority to support the argument, much less authority entitling him to recovery.  Nor are we cited to any evidence suggesting that the $8000 sought was a reasonable fee for whatever work Chapman’s counsel purportedly did.  Given these circumstances, we must conclude that the issue was improperly briefed and, therefore, waived. 

Accordingly, we modify the judgment to reflect that post-judgment interest is to accrue at the rate of 5% per annum.  So too do we modify the amount of pre-judgment interest due from $4,044.24 to $3,621.92.  As modified, the judgment is affirmed.  

Brian Quinn 

          Chief Justice