Dr. Perry KNOWLES, Appellant,

v.

**CITY OF GRANBURY and
C.W. Smith, Appellees.**

No. 2–96–215–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 14, 1997.

Rehearing Overruled Oct. 2, 1997.

Ned Webster, Hill Gilstrap, P.C., Arlington, for appellant.

David T. Moran, Billy R. McGill, Jackson & Walker, L.L.P., Dallas, for appellees.

Before LIVINGSTON, DAUPHINOT and RICHARDS, JJ.

## OPINION

DAUPHINOT, Justice.

This case stems from an alleged incident involving children, a municipal airport, an open, unlocked hangar, and a private airplane.

### BACKGROUND FACTS

Dr. Perry Knowles stored his 1970 Cessna in a large, locked hangar at Granbury Municipal Airport, which is owned and operated by the City of Granbury. He paid Granbury 90 dollars per month to store the airplane. Although other airplanes were kept in the same

hangar, no one except C.W. Smith, the airport manager, and the airport attendant had a key to the hangar. Therefore, no one, not even the owners of the airplanes, could enter the hangar without airport personnel first unlocking it. This security feature was one reason for the amount of the rental fee and for Knowles continuing to store his airplane there.

On June 11, 1994, Granbury and Smith allowed the Experimental Aircraft Association (EAA) to hold a "Young Eagles Fly–In" at the airport. Airport personnel unlocked and opened the doors to the hangar in which Knowles's airplane was stored. A former airport attendant heard Smith tell an EAA representative "that it would be permissible to use Dr. Knowles'[s] aircraft for demonstration purposes for the children that morning. Mr. Smith stated that he was sure Dr. Knowles would not mind." An EAA representative later told the attendant that she had seen a child sitting on the tail section of a plane in the hangar. After learning this fact, Smith did not lock or even close the hangar. Around 300 people milled around the hangar that day. That night, airport personnel discovered that several of the planes had been damaged, including Knowles's Cessna.

Knowles sued Granbury and Smith for negligence, gross negligence, conversion, and taking private property for public use without just compensation, in violation of the Texas Constitution. In addition, he sued Granbury for breach of an oral contract and breach of a bailment contract. Granbury and Smith filed a motion for summary judgment, arguing that the affirmative defenses of governmental and official immunity barred Knowles's claims against both defendants. They also argued that as a matter of law, no bailment contract was created and no taking occurred. The trial court granted the summary judgment without specifying the grounds.

## POINT OF ERROR

Knowles appeals, bringing one point of error arguing that the trial court erred in granting summary judgment because

- Granbury waived its sovereign immunity;
- a material issue of fact exists as to whether the agreement between Knowles and Granbury constituted a bailment;
- evidence on each element of the taking claim appears in the record; and
- Smith has no immunity because Granbury improperly delegated the duties of airport management to him, or, alternatively, because he did not satisfy the elements of official immunity.[1]

## DECISION

We hold that

- A material fact issue exists as to whether a bailment occurred;
- Summary judgment evidence satisfies all elements of a taking claim, including intentionality;
- Granbury waived its sovereign immunity; and
- Smith failed to conclusively establish the defense of official immunity.

We therefore reverse the summary judgment of the trial court as to the oral contract, bailment, and taking causes of action and remand for trial on those claims.

## SUMMARY JUDGMENTS: STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on

---

1. Knowles acknowledged in his brief and in oral argument that he does not appeal the trial court's judgment on the tort claims. Therefore, the only cause of action remaining to which Smith is a party is the taking claim; Granbury is named in the taking, oral contract, and bailment claims.

2. *See* Tex.R. Civ. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

the movant,[3] and all doubts about the existence of a genuine issue of a material fact are resolved against the movant.[4] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[5]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true.[6] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[7]

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[8]

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established[9] or if the summary judgment evidence conclusively establishes each element of an affirmative defense.[10]

When reviewing a summary judgment granted on general grounds, the court considers whether any theories set forth in the motion will support the summary judgment.[11]

## BAILMENT CLAIM

In the motion for summary judgment, Granbury argued that, as a matter of law, no bailment contract was created.

For a bailment to occur, there must usually be an express or implied contract, delivery of the property to the bailee, and acceptance of the property by the bailee.[12] Summary judgment evidence shows that, in exchange for a monthly fee of 90 dollars, Granbury housed Knowles's airplane in a locked hangar to which only airport personnel had a key, and that Granbury airport personnel told pilots considering other alternatives that "the care they would receive in the large hang[a]r and the fact that access was limited to the large hang[a]r, provided them a better and safer place to house their aircraft."

Nonetheless, Granbury contends that no bailment occurred as a matter of law because control over the plane did not pass to Granbury; that is, because Knowles kept the keys to the plane, no control passed to the city. Granbury relies on two parking lot cases— *Allright Auto Parks, Inc. v. Moore*[13] and *Panhandle South Plains Fair Ass'n v. Chappell*[14] to support its contention. Those cases are distinguishable.

First, the owners of the cars in those cases had the power to go onto those lots and physically take their cars. Knowles did not have that option; he could not even see his airplane without the consent of airport personnel. Airport personnel could not operate the airplane without Knowles's consent, but they could certainly see and touch it, and allow others to do so. Therefore, in the case before us, whether control did in fact pass is a material fact issue.

3.  See *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990).

4.  See *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

5.  See *Great Am.*, 391 S.W.2d at 47.

6.  See *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

7.  See *Great Am.*, 391 S.W.2d at 47.

8.  See *City of Houston*, 589 S.W.2d at 678.

9.  See *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

10.  See *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828–29 (Tex.App.—Dallas 1994, writ denied).

11.  See *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

12.  See *Jack Boles Servs., Inc. v. Stavely*, 906 S.W.2d 185, 188 (Tex.App.—Austin 1995, writ denied).

13.  560 S.W.2d 129, 130 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).

14.  142 S.W.2d 934 (Tex.Civ.App.—Amarillo 1940, no writ).

Second, there was no showing in either case relied on by Granbury of any undertaking by the defendant to care for and secure the car. In the case before us, an affidavit attests that the care and security of their airplanes were reasons given the pilots to continue housing their airplanes in the locked hangar.

Granbury has therefore not proved that no bailment was created as a matter of law.

## TAKING

■■■■ Granbury and Smith also argue that, as a matter of law, no taking occurred. Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made. . . ." [15] To recover under article I, section 17, a plaintiff must show that the government's intentional acts resulted in a taking of the plaintiff's property for public use.[16] Mere negligence on the government's part will not result in a taking.[17]

■■■■ Granbury and Smith argue that, at best, the negligence of Granbury and Smith caused the alleged damage. However, evidence produced by both Knowles and Granbury and Smith indicates that Granbury and Smith chose to host the "Fly–In" and chose to unlock and open the hangar so the public could enter it. The evidence further shows that Smith chose to leave the hangar open even after he was warned that a child had been spotted on an airplane. Because there is summary judgment evidence that Granbury's and Smith's acts were intentional, that

they appropriated Knowles's plane for public use, and that the plane was damaged as a result, Granbury and Smith have not established that, as a matter of law, no taking occurred.

## SOVEREIGN IMMUNITY

In its motion for summary judgment, Granbury argued that sovereign immunity bars Knowles's claims against it, excluding the taking claim.

■■■■ Generally, municipalities and other government entities have governmental or sovereign immunity from private litigation.[18] However, this immunity is not absolute. When a governmental entity contracts with a private citizen, it waives immunity from liability, but not immunity from suit.[19] Immunity from suit is waived when the legislature provides the private litigant permission to sue.[20] The entity itself may otherwise waive immunity from suit by conduct exceeding the mere execution of a contract.[21]

■■■■ As a home-rule municipality, Granbury may sue and be sued.[22] Had it wanted to exempt itself from liability, it could have.[23] Instead, Granbury's home rule charter provides that it "may sue, and be sued; may contract and may be contracted with." Because Granbury contracted with Knowles, it waived its immunity from liability. Because the Local Government Code and Granbury's charter provide that the city may be sued, its immunity from suit is also waived. Therefore, Granbury's sovereign immunity defense fails as a matter of law.

**15.** Tex Const., art. I, § 17.

**16.** *See City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.).

**17.** *See Steele v. City of Houston,* 603 S.W.2d 786, 790 (Tex.1980).

**18.** *See Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 84 (Tex.1997); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994).

**19.** *See Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 405 (1997).

**20.** *See id.* at 405.

**21.** *See id.* at 408 n. 1; *see id.* at 412–13 (Hecht, J., concurring). The concurring opinion of Justice Hecht, joined by Chief Justice Phillips, Justice Cornyn, and Justice Owen, points out that the *Federal Sign* holding is narrowly tied to the facts of that case. *See id.* at 412. Justice Hecht emphasizes that Federal Sign "never tendered performance, never performed services on TSU's property, and never delivered TSU any materials." *Id.*

**22.** *See* Tex. Loc. Gov't Code Ann. § 51.075 (Vernon 1988).

**23.** *See id.* § 51.077.

## OFFICIAL IMMUNITY

In its motion for summary judgment, Granbury also asserted that Smith had official immunity that insulated both Smith and Granbury from suit and liability. On appeal, Knowles argues that Smith did not have official immunity because he was an independent contractor to whom Granbury improperly delegated the duties of managing the airport. He alternatively argues that the elements of official immunity were not satisfied.

### Smith's Status as Employee or Independent Contractor

Knowles relies on section 22.017(a) of the Texas Transportation Code in arguing that Granbury improperly delegated the duties of managing the airport to Smith. The statute provides:

> The governing body of a local government by resolution may delegate to an officer, board, or other local governmental agency any power granted by this chapter to the local government or the governing body for planning, establishing, constructing, improving, equipping, maintaining, operating, regulating, protecting, and policing an airport ... established, owned, or controlled by the local government. The resolution must prescribe the powers and duties of the officer, board, or other local government agency.[24]

Knowles argues that because no resolution was presented below, Granbury improperly delegated the authority to manage the airport to Smith and therefore he is not entitled to assert the defense of official immunity. However, Knowles cites no authority tying such a technical violation, if any, to waiver of immunity.[25] We are not persuaded by this argument. Furthermore, if Smith was, as Granbury claims, an employee, no delegation would have occurred.

But in this case, whether Smith was an employee or an independent contractor is of no legal significance. Although some caselaw states that independent contractors do not enjoy official immunity,[26] this court has recently pointed out that, as a general rule, official immunity does extend to private parties who contract to undertake governmental duties.[27] The record establishes that Granbury's city manager hired Smith to manage the municipal airport. The issue is whether he satisfies the elements of official immunity.

### Elements of Official Immunity

As this court explained last year,

> To avoid liability on the basis of official immunity, a public official must show that he or she was (1) engaged in the performance of a discretionary function (2) in good faith (3) within the scope of the official's authority.[28]

While Knowles states in his brief that "Smith cannot claim that he was merely acting with discretion when he did appropriate and utilize Knowles'[s] aircraft," we do not read this as an argument that Smith was performing a ministerial, rather than a discretionary, act. Therefore, the only issues here are whether Smith performed in good faith an act that was within the scope of his authority.

### Good Faith

A government official does not perform in good faith if his or her conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."[29] Plaintiffs

---

**24.** Tex. Transp. Code Ann. § 22.017(a) (Vernon Supp.1997).

**25.** *See* Tex R. App. P. 74(f).

**26.** *See Gonzalez v. Heard, Goggan, Blair & Williams,* 923 S.W.2d 764, 766 (Tex.App.—Corpus Christi 1996, writ denied) (op. on reh'g).

**27.** *See Putthoff v. Ancrum,* 934 S.W.2d 164, 174 (Tex.App.—Fort Worth 1996, writ denied).

**28.** *Id.* at 170 (citing *City of Lancaster,* 883 S.W.2d at 653).

**29.** *Thomas v. Crow,* 862 S.W.2d 719, 721 (Tex. App.—Tyler 1993, no writ) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)).

must plead specific facts showing which rights were violated.[30] To be entitled to summary judgment, a defendant government official must prove that a reasonably prudent official could have believed the act complained of was proper.[31] To controvert the defendant's proof, the plaintiff must then show that no reasonable person in the official's position could have believed the facts were such that they would justify the official's acts.[32]

In his petition, Knowles alleged that Granbury agreed to store his plane in a private, locked hangar, with no access to the general public and that Smith was in charge of the airport. He further alleged that Smith and Granbury decided to open the hangar and use his plane for demonstration purposes in a public exhibition. Finally, he alleged that as a result, his airplane was damaged. These facts are specific enough to support Knowles's allegation that the taking clause of the Texas Constitution was violated.[33]

■■ However, Smith has not satisfied the objective good faith test. He focuses on what he believed about his conduct; he offers no evidence that an objective, reasonably prudent officer would have believed he acted properly.[34] Smith has therefore failed to establish the defense of official immunity.[35]

## Official Immunity Does Not Extend to Bailment and Contract Claims

Granbury seems to argue that if Smith had official immunity, Granbury would also be immunized from liability.

■■ However, the bailment and contract claims did not name Smith as a party, nor was he a party to the agreement between Granbury and Knowles. We find the argument that a governmental entity who waives immunity from liability by contracting with a private citizen can later revive that immunity based on the official immunity of its human representatives disingenuous and against public policy, given the fact that the government acts, and contracts, through its human representatives.

## CONCLUSION

Granbury and Smith did not establish that the summary judgment evidence failed to satisfy the elements of the taking and bailment claims. Further, they did not establish their own affirmative defenses of sovereign immunity and official immunity as a matter of law. We therefore sustain Knowles's point of error and remand the case for trial on the oral contract, bailment, and taking causes of action.

---

30. *See id.*

31. *See City of Lancaster,* 883 S.W.2d at 656–57.

32. *See id.* at 657.

33. *See* Tex Const., art. I, § 17.

34. *See City of Lancaster,* 883 S.W.2d at 656–57.

35. We do not reach the issue of whether Smith acted within the scope of his authority.